# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BRUCE R. BAKER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CHARLES PALMER, BRAD WITTROCK, and JAMES MORGAN,<br><br>　　　　Defendants. | No. 15-4039-LTS<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT** |

## *I.　INTRODUCTION*

This case is before me on defendants' motion (Doc. No. 30) for summary judgment. Plaintiff has filed a resistance (Doc. No. 33) and defendants have filed a reply (Doc. No. 34). The motion is fully submitted and ready for decision.

## *II.　PROCEDURAL HISTORY*

Plaintiff Bruce R. Baker filed a motion (Doc. No. 1) for leave to proceed *in forma pauperis* and a proposed *pro se* complaint (Doc. No. 1-1) on May 12, 2015. Baker alleged a number of violations of his constitutional rights. The Honorable Donald E. O'Brien, Senior United States District Judge, conducted an initial review (Doc. No. 7) and allowed Baker's *pro se* complaint (Doc. No. 8) to proceed. The Honorable Mark W. Bennett, United States District Judge, later appointed counsel for Baker and directed appointed counsel to file an amended complaint. Doc. No. 16. Baker, through counsel, filed his amended complaint (Doc. No. 23) on December 3, 2015. The amended complaint alleges two constitutional violations: (1) defendant Morgan violated Baker's constitutional rights by failing to protect him from a substantial risk of harm; and (2) defendants Palmer and Wittrock violated Baker's constitutional rights by failing to

implement proper procedures and training which could have prevented the harm. On December 7, 2015, defendants filed an answer (Doc. No. 24) denying Baker's claims.

### III. RELEVANT FACTS

Bruce Baker is a patient at the Civil Commitment Unit for Sex Offenders (CCUSO).[1] Charles Palmer is employed as the head of the Department of Human Services for the State of Iowa – the agency responsible for CCUSO. Doc. No. 23 at 2. Brad Wittrock is employed as Acting Director of CCUSO. *Id.* at 2. James Morgan is a staff member at CCUSO. *Id.* at 2.

It is undisputed that Baker was assaulted by another patient, Jeff Goodwin, at the CCUSO facility on March 15, 2015. Prior to March 10, 2015, Baker and Goodwin were roommates at CCUSO. Despite some minor arguments between them, there were no reports of any serious problems.[2] *See* Doc. No. 30-1 at 1.

On March 10, 2015, Goodwin met with Treatment Program Supervisor Steve McQueen and therapist Steve Tjaden. Doc. No. 30-3 at 1. Goodwin informed them that he "felt unsafe" and was going to assault Baker. *Id.* In response, McQueen and Tjaden talked with Goodwin and determined that the patients needed to be separated. *Id.* at 2. CCUSO's "room assignment team" then moved Baker to a room on another ward, and McQueen "alerted *all staff* on March 10, 2015, of the reason for Baker's move." *Id.* (emphasis added). The room assignment team believed that separating the two would "reduce the bickering and arguments throughout the day, and that would resolve the conflict." *Id.*

---

[1] In his resistance, Baker admitted all of the defendants' facts and did not file a statement of additional facts. *See* Doc. No. 33-2.

[2] Baker and Goodwin reportedly had a number of minor arguments. Baker complained that Goodwin was doing push-ups in his underwear and that Goodwin was not wearing headphones when he watched television. Doc. No. 30-1 at 1. Baker was also perturbed by Goodwin's snoring. *Id.* at 2.

Also on March 10, 2015, Baker met with therapist Dr. Jane Daniel and Psychiatric Security Specialist Greg Daubenberger to speak about the situation with Goodwin. *Id.* at 4. When Baker was informed that he would be moved to a room on another ward, he expressed his opinion that being moved was not fair since he did not do anything to warrant Goodwin's reaction. *See id.* Baker clarified that Goodwin was "manufacturing reasons not to get along with Pt. Baker in order to increase his chances to be moved off the unit." *Id.* Goodwin was eventually moved from a two-man to a four-man room. Doc. No. 30-1 at 3. Between March 10, 2015 and March 15, 2015, there were no further indications of problems between Goodwin and Baker. Doc. No. 30-1 at 3.

On March 15, 2015, Goodwin assaulted Baker during recreational ("rec") time. Doc. No. 30-2 at 2. Rec time is held in a separate ward that is opened at specified times and includes a library, pool tables and other recreational items. *Id.* Baker was assaulted from behind while he was returning a movie that he had borrowed from the library. *Id.* No staff were present in the library at that time and it appeared that Goodwin had waited until staff were preoccupied with other matters. Doc. No. 30-1 at 3. Baker had no warning of the assault, as Goodwin did not say anything to him. *Id.*

After the assault, staff ran into the room to assist Baker. *Id.* at 4. Four CCUSO staff members attended to Baker. *Id.* Baker was taken by ambulance to the Cherokee Regional Hospital, where he received an x-ray and was released with a possible concussion. *Id.* He suffered no broken bones or otherwise-serious injuries. *Id.*

On March 20, 2015, Baker was again taken to the hospital due to complaints of a headache. He was diagnosed with a concussion and left maxillary sinusitis. Doc. 30-3 at 53. In December 2015, Baker suffered a seizure that he attributes to the assault. Doc. 30-1 at 4. He was taken to the hospital for follow-up appointments related to the seizure on February 16, 2016. The actual cause of the seizure is unknown. *See* Doc. No 30-3 at 39-48, 54-64.

On July 2, 2015, Goodwin pleaded guilty to willful injury under Iowa Code § 708.4 stemming from his attack on Baker on March 15, 2015. Doc. No. 30-1 at 4; Doc. No. 30-3 at 65-71.

### IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of

the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis*, *Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V. DISCUSSION

As noted above, Baker makes two claims. First, he argues Morgan violated his constitutional rights by failing to protect him from a substantial risk of harm. Second, Baker argues that Palmer and Wittrock violated his constitutional rights by failing to implement proper procedures and training which could have prevented the harm. I will address each claim separately.

## A. Failure to Protect – Defendant Morgan

Baker alleges that Morgan is liable for failing to protect Baker from Goodwin's assault based on the combination of (1) his knowledge of Goodwin's threat on March 10, 2015; and (2) Goodwin's alleged statement to Morgan just prior to the assault that he would indeed assault Baker. Baker argues that Morgan did nothing to prevent the assault and should have at least reported to his superiors the alleged conversation he had with Goodwin just prior to the assault.

"When a person is involuntarily confined in a state mental health facility, the State has a duty imposed by the Substantive Due Process Clause of the Fourteenth Amendment to provide a 'reasonably safe environment.'" *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006) (quoting *Beck v. Wilson*, 377 F.3d 884, 890 (8th Cir. 2004)). "To establish prison officials[3] failed to prevent harm, [Baker] first must prove he was 'incarcerated under conditions posing a substantial risk of serious harm.'" *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "This is an objective requirement to ensure the deprivation is a violation of a constitutional right." *Holden*, 663 F.3d at 341. "Second, [Baker] must establish the prison officials were deliberately indifferent to inmate health or safety." *Id*. "This is a subjective requirement, mandating the prisoner prove the official both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). "Th[e] requisite state of mind is akin to recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 835); *see also Triplett v. Palmer*,

---

[3] The deliberate indifference standard arising under the Fourteenth Amendment for patients who have been civilly committed is the same as the deliberate indifference standard arising under the Eighth Amendment for prisoners. *Estate of Johnson v. Weber*, 785 F.3d 267, 272 (8th Cir. 2015)

592 F. App'x 534, 536 (8th Cir. 2015) (emphasizing that mere negligence on the part of officials is not sufficient to establish deliberate indifference).

In considering whether Morgan was deliberately indifferent to a substantial risk of serious harm to Baker, I find *Schoelch v. Mitchell*, 625 F.3d 1041 (8th Cir. 2010), to be particularly instructive. Schoelch alleged that a prison official on duty during lunch failed to protect him from an assault by another inmate. *Id.* at 1047-48. Schoelch similarly argued that the official was deliberately indifferent to the substantial risk of harm because of the official's knowledge of (1) a prior incident between Schoelch and the assailant, approximately two weeks before the assault at issue, during which the assailant assaulted Schoelch in his cell after threatening to kill him, and (2) events that occurred just prior to the assault, during which the assailant yelled at and pushed Schoelch while the two were standing in line for lunch. *Id.* at 1044-45.

The court found that neither instance put the official on notice of a substantial risk of harm. First, the court determined that the prior assault was not compelling because between the date of that assault and the subsequent assault, Schoelch and the assailant had no additional issues. Nor had Schoelch requested a transfer from their unit or otherwise expressed a belief that the assailant posed any ongoing danger. *Id.* at 1047. Second, the court held that the pushing and yelling immediately prior to the second assault did not "rise to the level of seriousness" to put the official on notice of a substantial risk of harm. *Id.* at 1048. The court concluded that because neither event provided notice of the substantial risk of harm, the assault was a surprise attack. *Id.* Therefore, "Schoelch failed to present sufficient evidence to show that Mitchell violated his constitutional right." *Id.*

Following *Schoelch*, I will address the two instances pertaining to Morgan's alleged deliberate indifference to a substantial risk of harm separately.

### *1. Goodwin's threat on March 10, 2015*

Considering all of the admitted facts, the threat on March 10, 2015, did not put Morgan on notice of a substantial risk of harm to Baker. At the outset, I note that Goodwin's threat was a single, isolated threat against Baker. *See Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) ("[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."). Goodwin simply mentioned that he was going to harm Baker. CCUSO promptly responded by separating the two roommates that night. *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) ("[E]ven if the prison officials actually know of a substantial risk to inmate health or safety, the officials may nevertheless escape liability 'if they respond[ ] reasonably to the risk, even if the harm ultimately was not averted.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)) (second alteration in original). After CCUSO separated the two, five days passed during which there were no issues between Goodwin and Baker. *See* Doc. No. 30-1 at 2-3. Baker admits that during the period between Goodwin's threat and the date of the assault, there were no further indications of problems between him and Goodwin. *Id.* at 3. Goodwin did not say anything threatening to Baker. Doc. No. 30-3 at 105. Nor did Goodwin even "give [Baker] the stink eye" or "make faces" at him. *Id.*

After learning of Goodwin's threat, Baker did not indicate that he considered Goodwin to pose any ongoing danger. Instead, when meeting with Daniel, Baker downplayed the threat and stated that Goodwin was "manufacturing reasons not to get along . . . in order to increase his chances of being moved off the unit." Doc. No 30-3 at 6; *see also Blades v. Schuetzle*, 302 F.3d 801, 804 (8th Cir. 2002) ("[Plaintiff's] own statements that [assailant] posed no risk of harm to him would furnish a bar to his claim even if prison officials had been aware that he would have come in contact with [assailant]."). Even when providing deposition testimony in this case, Baker still maintained that Goodwin's threat was merely an attempt to manipulate the rooming

8

situation. *See* Doc. No 30-3 at 89 ("I [] believe that [Goodwin] went to the staff for a problem that I believe possibly he shouldn't have.").

Underscoring the fact that Baker did not believe he was in danger, he did not request protection from Goodwin or any other precautionary procedures. *See Berry v. Sherman*, 365 F.3d 631, 634 (8th Cir. 2004) (finding a lack of substantial risk of serious harm where plaintiff rejected the opportunity for protective custody); *Roberts v. Ruppel*, No. 12-4054-CV-C-NKL-P, 2014 WL 12697200, at *3 (W.D. Mo. Sept. 15, 2014), *aff'd*, 627 F. App'x 583 (8th Cir. 2016) ("[P]laintiff himself did not believe that [assailant] posed a particular threat based on that conversation and did not seek protective custody."). In fact, during his discussion with Daniel he was chiefly concerned with remaining in the unit. Baker discussed the unfairness that would result if he, rather than Goodwin, was moved. *See* Doc. No. 30-3 at 6 ("Baker expressed the opinion that being moved himself was not fair since he hadn't done anything to warrant Pt. Goodwin's reaction . . . ."). Daniel's progress note documents that Baker regarded being moved as a "punishment" and that Daniel reassured him that moving was not intended to be a punishment. *Id*. After this exchange, Baker was "laughing a bit and reported he at least felt that his issues had been heard." *Id*.

Because Baker did not consider Goodwin to be a threat and CCUSO nonetheless took reasonable steps to address Goodwin's threatening comment, Goodwin's statement that he was going to harm Baker does not support a claim of deliberate indifference.

### 2. *Goodwin's alleged conversation with Morgan just prior to the assault*

Nor do I find that an alleged conversation with Goodwin put Morgan on notice of a substantial risk of harm to Baker because there is no indication of when the conversation actually occurred, if at all. Baker's theory is that Morgan was told of the impending assault just before it occurred. To support this, Baker relies on a hearsay statement from another patient, Denny Propp, who apparently overheard the conversation. Baker, however, admitted defendants' statement of fact that the conversation did not occur, nor

9

could it have occurred, because Propp lived on a different unit and thus would not have been at rec when the conversation is alleged to have occurred. Doc. No. 30-1 ¶35. Baker submitted no additional evidence to suggest that the conversation did, or could have, occurred. *See Fender v. Bull*, 166 F. App'x 869, 873 (8th Cir. 2006) ("[I]f the factual context renders [plaintiff's] claim implausible … [plaintiff] must come forward with more persuasive evidence to support [his] claim than would otherwise be necessary." (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))) (second, third and fourth alterations in original). As a result, Baker has failed to create a genuine issue of fact on this issue.

Baker's claim against Morgan fails as a matter of law. Goodwin's threat on March 10, 2015, is insufficient to establish that Morgan was deliberately indifferent to a substantial risk of harm to Baker. Moreover, Baker has presented insufficient evidence to create a genuine issue of fact as to whether the alleged conversation of March 15, 2015, actually occurred. As a result, Morgan is entitled to summary judgment on Baker's claim against him.

B.   *Failure to Train/Supervise – Defendants Palmer and Wittrock*

Baker argues that Palmer and Wittrock are responsible for his injuries as a result of their failure to adequately train or supervise CCUSO staff. "In a § 1983 case, an official "is only liable for his … own misconduct" and is not 'accountable for the misdeeds of [his] agents' under a theory such as respondeat superior or supervisor liability." *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)) (alterations in original). With that said, "a supervisor 'may be held individually liable … if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" *Vaughn v. Greene Cty., Ark.*, 438 F.3d 845, 851 (8th Cir. 2006) (quoting *Wever v. Lincoln Cty., Nebraska*, 388 F.3d 601, 606 (8th Cir. 2004)). Accordingly, "[t]he plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts."

10

*Id.* "This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Id.* As a result, "in most circumstances, a single incident does not provide a supervisor with notice of deficient training or supervision." *Id.* at 607.

Baker's claims against Palmer and Wittrock fail as a matter of law. Baker has not alleged that any particular defendant was "deliberately indifferent to or tacitly authorized" any act. Baker has not attempted to make any showing that any individual defendant had notice of inadequate procedures or training, much less so inadequate as to *likely* result in a constitutional violation. Instead, Baker simply makes the conclusory statement that "[k]nowing full that issues existed . . . Defendants . . . allowed Plaintiff and Mr. Goodwin to interact in a common area unsupervised." Doc. No. 33-1 at 2. Baker has not produced any evidence that any defendant was aware of faulty procedures or inadequate supervision. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("[G]eneral responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995))). As such, Palmer and Wittrock are entitled to summary judgment on Baker's claim against them.[4]

## VI. CONCLUSION

For the reasons set forth herein, defendants' motion (Doc. No. 30) for summary judgment is **granted** and this action is hereby **dismissed with prejudice**. Judgment shall enter against the plaintiff.

---

[4] Because Baker's claims fail on their merits as a matter of law, I need not address defendants' alternative arguments concerning qualified immunity and Eleventh Amendment immunity.

11

**IT IS SO ORDERED.**

**DATED** this 9th day of August, 2017.

                                                   _____
                                                 Leonard T. Strand, Chief Judge